IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **Katie Van Buren and Bret VanDepolder,** *on behalf of themselves and others similarly situated,* <br><br>　　**Plaintiffs,**<br><br>　v.<br><br>**Historic Images, Inc., Chris Galbreath, Evelyn Ringman, and James Grant,**<br><br>　　**Defendants.** | Civil Action No. 2:20-cv-02917<br>Jury Demanded |

## AMENDED
## JOINT MOTION FOR SETTLEMENT APPROVAL

On May 10, 2023, the Parties, Plaintiffs Katie Van Buren and Bret VanDepolder ("Plaintiffs") and Defendants Historic Images, Inc., Chris Galbreath, Evelyn Ringman, and James Grant ("Defendants"), filed a Joint Motion for Settlement Approval (D.E. # 74.) On August 23, 2023, the Court denied the motion without prejudice, finding the confidentiality provision of the parties' settlement agreement to be objectionable. (D.E. # 76.) The Parties, hereby file this Amended Joint Motion to approve the proposed settlement agreement without the confidentiality provision. In support, the Parties would state as follows:

### INTRODUCTION

Defendant Historic Images (the "Company") is an internet purveyor of vintage photography. Plaintiffs are present and former Image Cataloging Specialists ("ICS") for the Company. An ISC's basic job duties consist of digitizing historic newspaper and/or periodical photos in order to create a searchable, digital database for the photos' proprietor(s). This was done by logging onto the Company's proprietary website to enter basic information about each photo,

1

often including the category, date, photographer, description associated with the assigned photograph, and creating a title for each image processed.

This is a collective action based upon alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*. by Historic Images. In their Complaint, Plaintiffs contend that the Company's pay practices regarding the ICS, retained by the Company from December 21, 2017 to present, violated the FLSA's minimum wage and overtime provisions. (D.E. 1.). The Company denies liability and asserts that each ICS is an independent contractor, exempt from the FLSA.

This Civil Action was initiated on December 21, 2020, upon the filing of a Complaint by the Named Plaintiffs, on behalf of themselves and all others similarly-situated. *Id.* On January 29, 2021, Defendants filed an Answer denying Plaintiffs' FLSA allegations. (D.E. 11). Plaintiffs subsequently amended their Complaint on June 30, 2021, (D.E. 26), and Defendants answered the Amended Complaint on July 21, 2021, (D.E. 28.). After finalizing the terms of conditional certification of the collective, Plaintiffs ultimately filed an unopposed Motion to Conditionally Certify Collective Action, Equitably Toll the Statue of Limitations, and Facilitate Notice to Potential Collective Members on April 13, 2022. (D.E. 38.). The Motion was granted on May 23, 2022. (D.E. 39.).

The opt-in period commenced shortly thereafter and was completed in September of 2022. The Parties exchanged extensive written discovery and commenced the difficult work of negotiating settlement based upon both the Plaintiffs' recollection of time worked and the Company's own proprietary data from its image processing system. Mediation was held on February 14, 2023, with mediator Allen Blair, but a settlement was not reached. The Parties continued to work diligently and, on April 3, 2023, agreed on a tentative settlement. Formal Notice

to this effect was filed on April 6 2023. (D.E. 2). On May 10, the Parties moved for the Court's approval of the Settlement Agreement. (D.E. # 74.)

The Court took issue with the Agreement's confidentiality provision, which it deemed "likely not permissible" and "essential and material consideration." (D.E. # 76 at PageID 370.) Since the parties had not attempted to justify the provision's inclusion, the Court denied the motion without prejudice.

Accordingly, the parties are now filing this motion for approval of the settlement agreement with the confidentiality provision removed. The only other change that has been made is to the timetable for settlement payments, which has been extended by three months.

I.   **THE STANDARD FOR SETTLEMENT APPROVAL.**

There are two ways that a claim under the Fair Labor Standards Act ("FLSA") can be resolved through agreement of the parties: either the Secretary of Labor can supervise the payment of back wages or the employer and employee can present the proposed settlement to the district court for approval. *Scott v. Titlemax of Tenn.*, No. 2:13-cv-2710-SHL-dkv, 2015 U.S. Dist. LEXIS 181239, at *1-2 (W.D. Tenn. May 8, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)). Under *Lynn's*, if the parties submit the agreement to the court for approval, as the parties are doing here, the court must scrutinize it for fairness and decide whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-CV-400, 2012 U.S. Dist. LEXIS 181808, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012) (citing *Lynn's*, 679 F.2d at 1355). *Lynn's* established three factors for a district court to examine in determining whether approval of an FLSA settlement is appropriate: (1) whether it was achieved in an adversarial context; (2) whether the plaintiffs were represented by attorneys who can protect their rights; and (3) whether it reflects a fair and reasonable compromise over issues that are actually in dispute. *Id.* at 1353-

3

54.

Court approval of a FLSA settlement requires the Court to determine the fairness and reasonableness of the settlement. 29 U.S.C. § 216(b); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *2 (N.D. Ohio March 8, 2010); *Bartlow v. Grand Crowne Resorts of Pigeon Forge,* 2012 U.S. Dist. LEXIS 181808, *1, (E.D. Tenn. Dec. 26, 2012). The FLSA's pay requirements are mandatory and, except in two narrow circumstances, employees' rights under the FLSA are generally not subject to bargaining, waiver, or modification by contract or settlement. *Dillworth*, 2010 WL 776933, at *5 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). One such circumstance, like the present matter, is when a court reviews and approves a settlement in a private action for back wages. *Id.* (citing *Lynn's*, 679 F.2d at 1353). Before approving a settlement, a court must ensure that the parties are not negotiating around the FLSA's requirements and that the settlement represents a fair and reasonable resolution of a bona fide dispute. *Id.*; *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

When determining whether a settlement is fair, reasonable, and adequate, courts look to the following factors: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of litigation; (3) the stage of the proceedings and the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Green v. Hepaco, LLC*, 2014 U.S. Dist. LEXIS 83155, at *8, (W.D. Tenn. June 12, 2014) (citing these factors in a single plaintiff action).

II.     **THERE IS A BONA FIDE DISPUTE BETWEEN THE PARTIES.**

The present Settlement Agreement resolves a bona fide dispute and justifies resolution of the claims. Plaintiffs alleged that Defendants willfully violated the FLSA by failing to pay

4

Plaintiffs minimum wage and overtime for all hours worked. Defendants assert that the Plaintiffs, like all other ICS, are independent contractors, exempt from the FLSA's wage and overtime requirements. Plaintiffs maintain they were employees. As a result of the alleged misclassification, Plaintiffs, who were paid on a piece rate basis for processing vintage photographs, allege they were often paid an effective hourly rate less that the federal minimum wage. And for hours they worked over forty in a work week, Plaintiffs allege they were not paid an overtime premium as required under the FLSA.

Plaintiff's claims for damages were based on a combination of their best recollection of the hours worked, their best estimate of number of photographs they processed per hour, and raw data from the Company's system.

Defendants argued that their classification of Plaintiffs as independent contractors was supported by the relevant law and in keeping with Plaintiffs' job duties and the totality of the circumstances. Defendants further argued that Plaintiffs' recollection of hours worked and their rate of production was unrealistic and offered production records and pay records which purportedly supported their position.

If Plaintiffs position were to prevail at trial, Defendants would be faced with the prospect of a potentially substantial monetary verdict at trial and the costs of Plaintiffs' mounting attorneys' fees, as well as defense costs. Conversely, if Defendants ultimately prevailed, Plaintiffs would face dismissal of their claims and no recovery at all.

Furthermore, at the close of discovery, both sides came to recognize that Defendants' production records, when properly deciphered, provided an adequate basis upon which to formulate an estimate of damages with which both sides were comfortable. While they would never agree on the misclassification issue, this agreement on damages calculation methodology

provided the grounds for a compromise on the remaining issues.

### III. THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF THE PARTIES' DISPUTE.

The Parties believe that the settlement is fair and reasonable, and an analysis of the six factors listed above supports this conclusion.

First, the risk of fraud or collusion is minimal because the Settlement was reached only after the parties engaged in arms-length negotiations by experienced counsel. This Settlement provides for payment for the essential elements of Plaintiffs' claims: full overtime pay and a substantial portion of the claimed liquidated damages, as well as reasonable attorneys' fees[1] and expenses.

Second, the Settlement eliminates the inherent risks and expense both parties would incur if this litigation were to continue through resolution on the merits. If this case were to proceed to trial, the Parties would expend considerable effort and incur sizeable costs in preparation for trial, with risks for all Parties regarding the ultimate resolution of the case.

Third, the Parties engaged in complex discovery in support of accurate calculation of damages. Plaintiffs' Counsel thoroughly investigated Plaintiffs' claims through a thorough review of Defendants' time and pay records. Plaintiffs' Counsel used these pay and time records to create best estimates and calculations of the back wages allegedly owed to Plaintiffs. Based on this information, Plaintiffs were able to make an informed settlement offer, which served as the foundation for a final settlement agreement. ***See attached* Exhibit 2. ("Damages spreadsheet").**

Fourth, although both Parties remain confident that they would have succeeded at trial on the merits, there is no guarantee as to the outcome for either Party, and this Settlement allows the

---

[1] In order to facilitate settlement, Plaintiffs' counsel has accepted a substantial reduction in its fees.

6

Parties to avoid a complex and lengthy trial with an uncertain outcome. The Parties decided that they would rather have finality outweigh the risks and/or benefits that are possible if the case continued. *See Dillworth*, 2010 WL 77693, at *5.

Fifth, Plaintiffs' Counsel, together with Plaintiffs, evaluated the facts of the case, Plaintiffs' claims, Defendants' defenses, the documentary evidence, and the likelihood of success on the

1

merits. Plaintiffs ultimately agreed to compromise on liquidated damages claimed and this willingness to compromise made this a win-win for both sides.

Sixth, Plaintiffs' Counsel are experienced in litigating single-plaintiff and collective action lawsuits with issues similar to the present case, and based on their knowledge of the case and the applicable law, they believe that the settlement is fair, reasonable, and more than adequately represents Plaintiffs' interests. The Court is permitted to give the opinion of Plaintiffs' Counsel substantial deference in approving this Settlement Agreement. *See, e.g., Manners v. Am. Gen. Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22880, at *82 (M.D. Tenn. Aug. 11, 1999).

## IV. THE SETTLEMENT AMOUNT AND PLAINTIFF'S ATTORNEYS' FEES ARE REASONABLE.

The Settlement amount for each Plaintiff is based upon a complex calculation of the average amount of time each Plaintiff spent processing a photographic image and the number of hours worked each week. These estimates are derived from data provide by the Company as to the date and time each processed image was submitted by the relevant Plaintiff.

Plaintiffs worked on different sets of images, with varying levels of complexity, and each Plaintiff brought to their job a unique level of manual dexterity and mental acuity. Consequently, the average processing time for the Plaintiffs varied widely, from less than a minute to over five

7

minutes per image. In addition, Plaintiffs' work schedules varied broadly as well, with some working strictly part-time, while other put in a considerable amount of time.

As a result, Plaintiffs' back pay damages allegedly ranged from $0 to nearly $24,000. To account for the possibility that the data provided did not fully account for such intangibles as system downtime and instances of reprocessing the same image to correct for errors, Plaintiffs' Counsel determined that it would be equitable to provide all Plaintiffs with a base amount ofdamages of $1,000. The remainder of the common fund, after accounting for attorneys' fees and representative plaintiff allowance, was distributed on a *pro rata* basis, based upon the alleged damages calculated for each Plaintiff. The result was that, under the proposed Agreement, three Plaintiffs are to receive a flat $1,000, and the remainder will receive an amount at least as great as their actual damages estimate. ***See attached* Exhibit 2. ("Damages spreadsheet").** While it remains disputed how much time each Plaintiff actually spent working, for purposes of facilitating this Settlement, the parties have reached an accord as to the best estimate, giving Plaintiffs the benefit of the doubt.

An attorneys' fee award must be reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). A fee is reasonable if it is adequately compensatory to attract competent counsel, but does not produce a windfall for attorneys. *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 893 (1984)). Courts in the Sixth Circuit have the discretion to select the method for calculating a fee award, which include the lodestar and common fund method. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515 (6th Cir. 1993). In this case, the Court should approve the attorneys' fees and costs sought by Plaintiffs' Counsel, calculated using the Lodestar method, and agreed to by Defendants.

First, Plaintiffs' Counsel obtained a result that compensates Plaintiffs for 100% of their

8

alleged back wages for a three-year lookback, plus a substantial portion of the claimed liquidated damages.

Second, in light of the facts and circumstances, Plaintiff's Counsel's fee of $40,000, which includes expenses and costs incurred in the case, is more than fair and reasonable compensation for an expeditious resolution of this matter. Named Plaintiffs' agreement for legal services with the Crone Law Firm provides for payment of 35% of the settlement amount or the firm's lodestaramount, whichever is greater. The $40,000 amount agreed to represents less than 30% of the total, a substantial reduction from the contracted amount and less than half of the firm's lodestar amount. *See attached* **Exhibit 3. ("Oliphant Declaration").**

Finally, Plaintiffs' Counsel bore a significant risk of nonpayment in this case if Defendant prevailed on the merits. Plaintiffs agreed to be represented by Plaintiffs' Counsel on a contingency basis, and bore the risks associated with a contingency fee agreement.

## CONCLUSION

The Court should approve the Parties' Settlement because it was achieved in an adversarial context, the Plaintiffs and Defendants were represented by attorneys who could protect their rights, and it reflects a fair and reasonable compromise over issues that are actually in dispute. This FLSA Settlement is the product of arms-length negotiation between the Parties' counsel and fairly and reasonably resolves a bona fide dispute between the Parties. For these reasons and all those set forth above, the Court should grant this Amended Motion for Settlement Approval.

WHEREFORE, the Parties respectfully request that the Court approve the Settlement reached between Plaintiffs and Defendants, as revised per the Court's order.

Respectfully submitted,

s/ Phillip E. Oliphant
Alan G. Crone, TN Bar No. 014285
Philip E. Oliphant, TN Bar No. 025990
THE CRONE LAW FIRM, PLC
88 Union Avenue, 14th Floor
Memphis, TN 38103
901.737.7740 (voice)
901.474.7959 (voice)
901.474.7926 (fax)
poliphant@cronelawfirmplc.com

*Attorneys for Plaintiffs*

s/Aubrey B. Greer
Ross E. Webster (TN #24784)
Aubrey B. Greer (TN #35613)
GLANKLER BROWN, PLLC
6000 Poplar Avenue., Ste. 400
Memphis, TN  38119
901.576.1891 (voice)
901.525.2389 (fax)
rwebster@glankler.com
agreer@glankler.com


*Attorneys for Defendants*

10